# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael N. Lewis, Sr., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 362 C.D. 2024 |
| | : | |
| City of Philadelphia (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | Argued: November 6, 2024 |


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MATTHEW S. WOLF, Judge


OPINION BY JUDGE WOLF                                    FILED: August 11, 2025


Michael N. Lewis, Sr., (Claimant) petitions this Court for review of a March 6, 2024 order of the Workers' Compensation Appeal Board (Board), which reversed a May 15, 2023 decision by Workers' Compensation Judge (WCJ) Lawrence Beck. WCJ Beck granted Claimant's second Petition to Review Compensation Benefits filed September 20, 2021 (Review Petition 2) in which Claimant amended the description of his work injury. The Board reversed, concluding that technical res judicata barred the amended injury description because Claimant had already amended his injury description in an earlier review petition (Review Petition 1) that was resolved by stipulation between Claimant and the City of Philadelphia (Employer). Claimant argues that the Board erred in applying technical res judicata because Review Petition 2 dealt with new issues and was not

precluded, and also because the parties' stipulation expressly allowed new petitions. After review, we reverse the Board's order.

Claimant worked as a police officer for Employer. On February 4, 2017, in the course and scope of his employment, Claimant responded to a burglary in progress at a pet store. The burglary suspect resisted arrest and Claimant was struck in the head repeatedly during a protracted struggle. Claimant sustained physical injuries to his hand/wrist, low back and chest wall, and thoracic spine. Employer acknowledged Claimant's work injury through a Notice of Compensation Payable (NCP). Claimant elected to transfer into Employer's heart and lung disability system.[1] Following arbitration under the Heart and Lung Act, Claimant's temporary benefits thereunder were terminated by agreement of the parties as approved by the City of Philadelphia Heart and Lung Arbitration Board on October 22, 2021.

Separately, on April 15, 2021, Claimant filed Review Petition 1, which sought to amend the injury description to include a concussion and concussion-related symptoms arising from the same work incident. Claimant filed a related penalty petition alleging Employer had failed to accept those injuries. In August 2021, the parties filed a joint stipulation resolving Review Petition 1 and the penalty petition. Reproduced Record (R.R.) at 248a-50a. In the stipulation, the parties

---

[1] As the Board explained:

> The Heart and Lung Act (Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638) applies only to public employees and requires payment of full salary to those who are temporarily unable to perform their job because of a work injury. 53 P.S. § 637. Public employees are also entitled to benefits under the Act but any compensation received by an employee collecting Heart and Lung benefits shall be turned over to the public employer. *Id.*

Board Op. at 3 n.2.

agreed that Employer would amend the NCP to include concussion, headaches, balance issues, and vision issues, and that Claimant could continue treating with Employer's heart and lung program. *Id.* at 248a. The stipulation also stated: "The parties agree that this Stipulation does not prevent the parties from filing future petitions and other relief as appropriate pursuant to the Worker's Compensation Act (Act)[2]." *Id.* at 249a. On August 19, 2021, WCJ Audrey Beach issued a decision approving the stipulation and granting Review Petition 1 in accordance therewith. *Id.* at 244a-47a.

On September 20, 2021, Claimant filed Review Petition 2. It sought to amend Claimant's work injury to include a psychological injury as a result of physical injury. R.R. at 3a. Employer filed an answer denying the allegations in Review Petition 2 and arguing, *inter alia*, that Review Petition 2 was barred by the doctrines of res judicata and/or collateral estoppel. WCJ Lawrence Beck held evidentiary hearings on Review Petition 2 over several days between October 2021 and September 2022.

Before WCJ Beck, the parties agreed to admit Claimant's May 12, 2021 testimony from Review Petition 1 about the incident that caused the work injury. R.R. at 39a-40a. In his testimony on Review Petition 1, Claimant described the February 4, 2017 incident as follows. Claimant had been a City of Philadelphia police officer for more than 24 years. When Claimant responded to the burglary at the pet store, his partner had already been injured by the suspect and was not able to subdue the suspect. Claimant grabbed the suspect—a 5'9", 180-pound man known to police as a former United States marine—and attempted to place him in handcuffs. *Id.* at 94a, 99a. The suspect resisted, turned around, and hit Claimant in the forehead

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1; 2501-2710.

3

and temples. *Id.* at 95a. The suspect continued to hit Claimant in the head with closed fists until Claimant felt faint. Claimant pushed the suspect away to regain composure, then tried to handcuff the suspect again. The suspect resumed hitting Claimant, who then began to return the blows to try to gain control. The suspect charged Claimant a third time, this time pushing Claimant backward, which caused Claimant's head to strike a steel shelf in the store. The force of the impact knocked the steel shelving over "like dominoes." *Id.* at 97a. The suspect kept hitting Claimant as Claimant tried to get up off the floor. Claimant's face was bleeding. With his partner's assistance, Claimant tased the suspect about 13 times in his neck and face—other parts of his body were covered with thick clothing—but there was "still no effect." *Id.* at 98a. Claimant fought the suspect with his hands until Claimant "had nothing left in [him,]" and then Claimant drew his duty firearm. Claimant hesitated "for some reason," perhaps because the suspect "was known to police," and at that moment other officers arrived and subdued the suspect. *Id.* at 99a. Claimant did not discharge his firearm. He collapsed and was rushed to the hospital. Claimant feared for his life during the incident. "[I]t was the one time in [his] career that [he] wasn't sure if [he and his] partner were going to go home that day." *Id.* at 100a. He did not perform police duties after the incident and subsequently retired.

Claimant explained that his physical injuries—which Employer ultimately accepted—were a concussion, injuries to his hand and back, and facial abrasions. He remains in pain from the back and hand injuries and receives periodic vestibular therapy for the concussion.

Regarding psychological injuries, Claimant presented his own deposition and live testimony before WCJ Beck. He testified that he never had any

4

psychological treatment or hospitalizations before the February 4, 2017 incident. About three to six months after the incident, he began to feel irritable, unhappy, overwhelmed, anxious, frustrated, and helpless. He "was crying a lot" and "began isolating himself." R.R. at 133a. In June and July of 2019, Claimant briefly treated with Paul Dikun, EdD., Ph.D., a licensed psychologist. Claimant "was in denial" about his symptoms and "felt embarrassed talking to [Dr. Dikun] about how [Claimant] was feeling." *Id.* at 133a-34a. Claimant stopped seeing Dr. Dikun and tried to deal with his symptoms on his own. But the symptoms intensified, with Claimant becoming more irritable and overwhelmed. After he ceased treatment in July 2019, "there were times when [Claimant] thought about suicide." *Id.* at 135a. These thoughts prompted Claimant to return to Dr. Dikun in April 2021. *Id.* at 134a-35a. He has been consistently treating with Dr. Dikun and takes an antidepressant medication prescribed by his primary care physician. Even with these treatments his symptoms have only moderately improved. Seeing a police vehicle or hearing a siren causes Claimant to experience flashbacks to the incident. *Id.* at 69a. Claimant clarified on cross-examination that other stressors—the deaths of his mother in 2012 and his sister in 2020, his son's involuntary psychiatric commitment, and anti-police expressions in society—do not impact his symptoms. *Id.* at 77a-80a.

Claimant presented Dr. Dikun's deposition testimony. Dr. Dikun explained that he saw Claimant on June 24 and July 8, 2019. Dr. Dikun made a diagnosis of major depressive disorder, which he opined is directly related to the work incident. Dr. Dikun confirmed that Claimant was embarrassed to receive treatment for mental health issues. Dr. Dikun treats Claimant through psychotherapy. He noted Claimant experiences occasional suicidal ideation. R.R. at 206a. He acknowledged that Claimant was negatively affected by other stressors

5

and that these could impact depression. Dr. Dikun opined, however, that Claimant's depression and resulting inability to work as a police officer arose from the assault and physical injury Claimant sustained during the incident. R.R. at 197a. He further opined that because Claimant is not a trained physician or psychologist and was never advised by anyone to seek psychological care after the incident, Claimant would not have been aware that he needed treatment for psychological injury and that the other treatments he received would be insufficient. *Id.* at 184a-86a.

Employer submitted Claimant's April 14, 2021 testimony from his heart and lung arbitration proceeding. In that testimony Claimant described the incident and his physical injuries and treatments. The only reference to psychological injury was Claimant's passing statement that he felt "hopeless." Certified Record (C.R.), Item No. 24, at 18. Employer also presented the deposition testimony of Gladys Fenichel, M.D., who examined Claimant on January 6, 2022. Dr. Fenichel opined that although Claimant exhibited some symptoms of depression, the condition was not caused by the work incident. She based that opinion on the fact that Claimant did not seek treatment for his psychological symptoms until 2019 (two years after the incident) and did not begin consistent long-term treatment until 2021. Dr. Fenichel stated that based on her discussion with Claimant, the two-year gap in treatment after the two visits in 2019 occurred because "[Claimant] was feeling better." C.R., Item No. 22, at 32.

After the hearing, WCJ Beck issued a decision granting Review Petition 2. The WCJ credited Claimant's testimony and credited Dr. Dikun's testimony over Dr. Fenichel's testimony to the extent they conflict. R.R. at 17a. The WCJ specifically found that the delays and gaps in Claimant's seeking of mental health treatment are, as explained by Dr. Dikun, attributable to Claimant's aversion to

seeking that treatment and the fact that the symptoms of the condition wax and wane over time. *Id.* The WCJ concluded that although Claimant's mental injuries may have been manifest during the Review Petition 1 proceeding, they were not part of that earlier litigation and so are not precluded under our decision in *Weney v. Workers' Compensation Appeal Board (MAC Sprinkler Systems, Inc.)*, 960 A.2d 949 (Pa. Cmwlth. 2008) (holding that second review petition that could have been litigated along with first review petition was barred by res judicata), *appeal denied*, 971 A.2d 494 (Pa. 2009). R.R. at 18a.

Employer appealed and the Board reversed the WCJ's decision. It reasoned, in relevant part:

> In *Weney*, the question was whether the claimant was barred by technical res judicata or collateral estoppel from seeking to add additional injuries to a NCP where he and the defendant, in a prior review petition, stipulated and agreed to amend the NCP to add an additional injury, but the claimant did not seek to include in that stipulation the injuries at issue in the second review petition even though he knew of those injuries at the time he entered into the stipulation . . . . The court held that although the claimant did not actually litigate, in that first proceeding, the injuries he sought to add in the second proceeding, the evidence established that he should have done so because he was aware of those injuries at the time of the first proceeding.

> Here, Claimant filed [Review Petition 1] on April 15, 2021 to include a concussion and concussion-related symptoms in the injury description. WCJ Beach circulated her Decision and Order [on Review Petition 1] on August 19, 2021. Dr. Dikun testified that he first saw Claimant on June 24, 2019 . . . . He diagnosed major depressive disorder related to the 2017 work incident. We agree with [Employer] that evidence exists sufficient to demonstrate that Claimant was aware, during the proceedings before WCJ Beach [on Review Petition 1], of a possible work-

7

related psychological condition. Although Claimant did not litigate, in [the Review Petition 1] proceeding, the injuries he sought to add in the [Review Petition 2] proceeding, he should have done so because he was aware of those injuries at the time of the first proceeding. *Weney*. *Weney* is directly on point with the facts of his matter, as per Claimant's own evidence. The underlying basis of his current contention is the assertion that [Employer] is responsible for a psychological condition stemming from the original work incident. Therefore, through [Review Petition 2], Claimant sought to litigate an issue that should have been addressed previously.

Board Op. at 7-8.

On appeal,[3] Claimant argues that Review Petition 2 was not precluded because there was no final judgment on the merits in the Review Petition 1 proceeding that can bind Claimant to a specific description of the work injury. Claimant argues the Board erred in applying *Weney*, factually and legally. He argues *Weney* must be distinguished because in this case, there is an express stipulation that new petitions would be permitted if consistent with the Act. Claimant points out that workers' compensation claimants have included such language in stipulations to avoid the same result as in *Weney*. He argues the Board erred in ignoring that carefully negotiated language here.

Employer responds that the stipulation resolved Review Petition 1 and thus operates as a final judgment and has preclusive effect. Employer claims the stipulation does not authorize Review Petition 2 because the clause does not specifically reference further "review petitions." Further Employer cites the limiting phrase at the end of the waiver—"as appropriate pursuant to the Workers'

---

[3] Our standard of review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lehigh Specialty Melting, Inc. v. Workers' Comp. Appeal Bd. (Bosco)*, 260 A.3d 1053, 1058 n.3 (Pa. Cmwlth. 2021).

Compensation Act"—as suggesting that *Weney* still applies, since *Weney* was interpreting the Act. Employer maintains that nothing in the stipulation waived Employer's defense under *Weney*.

We agree with Claimant that this matter is factually distinguishable from *Weney*. In *Weney*, the claimant filed two review petitions two months apart. Both related to the same work incident. The first review petition alleged a shoulder injury and the second alleged spinal and neck injuries. 960 A.2d at 951. The claimant's treating physician and expert witness testified that the claimant complained to him of neck pain from the start of treatment and that he immediately told the claimant the neck pain resulted from the work injury. *Id.* at 955. The physician also testified that medical imaging conducted during litigation of the first review petition showed disc herniations consistent with Claimant's complaints of neck pain. *Id.* at 956. We held that "this testimony provides concrete evidence that Claimant was aware of the injury to his neck or cervical spine and its relatedness to the . . . work incident during the earlier proceedings on his [first review petition]." *Id.* For that reason, we held "he should have litigated [the neck injury] at that time" and applied technical res judicata to preclude the claimant in *Weney* from raising that injury in the second review petition.

In deciding *Weney*, we analyzed and distinguished our prior decision in *Henion*, 776 A.2d 362. In *Henion*, the claimant's first claim petition identified injuries to the right hand and index finger, and a later claim petition and review petition—filed two years later—identified carpal tunnel syndrome in both hands as an additional work injury. *Id.* at 364. The WCJ and Board both concluded that the later claim petition and review petition were precluded because the carpal tunnel issue could have been litigated in the first proceeding. We reversed, determining that

9

the carpal tunnel syndrome was not something that should have been litigated in the first proceeding, based on the testimony in evidence. We noted that the claimant's treating physician and expert witness testified that, at the time of the first proceeding, the claimant's symptoms were "only suggestive of carpal tunnel syndrome, and the symptoms had not yet been confirmed by an EMG[4]." *Id.* at 366 n.9. The physician testified that an EMG later confirmed the presence of carpal tunnel syndrome, but "not until a year after" the filing of the initial claim petition. *Id.* We held that "[c]ertainly, [the c]laimant should *not* have litigated the issue of carpal tunnel syndrome during the earlier claim petition proceeding because, at that time, there was no concrete evidence that the syndrome existed." *Id.* (emphasis added).

Factually, this matter is more similar to *Henion* than it is to *Weney*. Claimant and Dr. Dikun both acknowledged that Claimant was diagnosed with depression before Review Petition 2 was filed, but neither testified that Claimant was aware that his depression was a compensable work injury at the time of Review Petition 1. Claimant testified that it was a gradual worsening of the symptoms of his depression—and suicidal ideation in particular—that prompted him to return to treatment with Dr. Dikun despite Claimant's reluctance to receive treatment. Thus, the nature of Claimant's psychological injury changed over time. Some of that change in Claimant's condition occurred during the proceedings on Review Petition 1. Claimant filed Review Petition 1 on April 15, 2021, and returned to treat with Dr. Dikun on April 29, 2021. Claimant filed Review Petition 2 in September 2021. Like in *Henion*, and unlike in *Weney*, there is no "concrete evidence" here that Claimant was aware before filing Review Petition 2 that his psychological symptoms were (a) indicative of a particular, compensable injury and (b) related to the work incident.

_____

[4] EMG, or electromyography, is "a computerized electrical analysis of the nerves." *Henion*, 776 A.2d at 365 n.6.

*Weney*, 960 A.2d at 951.

As well, *Henion* and *Weney* both involved physical injuries that can be detected by diagnostic imaging or other direct observation of the physical tissues of the body. No such tests exist for psychological injuries, which are not directly observable. Rather, as Dr. Dikun credibly testified, a trained physician or psychologist would need to make professional judgments based on Claimant's history and clinical presentation, and Claimant would likely not realize the severity or cause of his psychological injury on his own. The evidence here, and especially the testimony of Claimant's treating physician, does not suggest that Claimant or his physicians understood his psychological injury to the point that Claimant "should have litigated" it before September 2021, which was only six months into his consistent treatment with Dr. Dikun.

We conclude that the Board erred in applying *Weney* in this factual circumstance to find that Review Petition 2 was subject to technical res judicata based on Review Petition 1.[5] Accordingly, we reverse.

_____
MATTHEW S. WOLF, Judge

---

[5] Given our dispositive holding that *Weney* is distinguishable and thus did not apply to preclude Review Petition 2, we do not reach Claimant's subsequent issues on appeal, including whether the stipulation altered application of *Weney*.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael N. Lewis, Sr., :
     Petitioner :
          :
   v. : No. 362 C.D. 2024
          :
City of Philadelphia (Workers' :
Compensation Appeal Board), :
     Respondent :

# **O R D E R**

AND NOW, this 11th day of August 2025, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated March 6, 2024, is hereby REVERSED.

_____
MATTHEW S. WOLF, Judge